IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KIMBERLY LEBLANC,
    Plaintiff,

vs.                              Case No. 5:07cv97/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

    This suit involves an application for DIB under Title II of the Act, filed by Plaintiff on May 30, 2005 (Tr. 11).[1] The application was denied initially and on reconsideration, and Plaintiff then requested a hearing before an administrative law judge (ALJ) (Tr. 21–48; Doc. 14 at 2). The ALJ

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on August 20, 2007 (*see* Docs. 11, 12).

held an administrative hearing on August 14, 2006 (*see* Tr. 404–37).  On December 18, 2006, the ALJ issued a decision finding that Plaintiff was "not disabled," as that term is defined in the Act (Tr. 8–20).  On April 13, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 4–6).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.   FINDINGS OF THE ALJ

On December 18, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 11–20):

1)   Plaintiff meets the insured status requirements of the Act through December 31, 2009.

2)   Plaintiff has not engaged in substantial gainful activity since May 23, 2005, the alleged onset of disability date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*).

3)   Plaintiff has the following severe impairments:  status post total knee replacement, diabetes, hypertension, asthma, irritable bowel syndrome, arthritis, degenerative joint disease, gastroesophageal reflux disease (GERD), obesity, and depression resulting in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (20 C.F.R. § 404.1520(c)).

4)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5)   Plaintiff has the residual functional capacity (RFC) to occasionally lift 20 pounds and frequently lift 10 pounds.  She can sit, stand, or walk for approximately 6 hours in an 8-hour workday; occasionally climb stairs, balance, kneel, or crawl; and frequently stoop and crouch.  As a result of her mental impairments, Plaintiff is limited in her ability to maintain social functioning.

6)   Plaintiff is capable of performing past relevant work as general office clerk, both as previously performed by Plaintiff and as generally performed in the national economy.  This work does not require the performance of work-related activities precluded by Plaintiff's RFC (20 C.F.R. § 404.1565).

7) Plaintiff has not been under a "disability," as defined in the Act, from May 23, 2005 through the date of the ALJ's decision (20 C.F.R.§ 404.1520(f)).[2]

## III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[2]Thus, the time frame relevant to this appeal is May 23, 2005 (alleged onset) to December 18, 2006 (date of the ALJ's opinion), although Plaintiff is insured through December 31, 2009.

Case No. 5:07cv97/RS/EMT

months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY[3]

### A. Personal History

On August 14, 2006, at Plaintiff's hearing before the ALJ, she testified that she last worked in August 2004 as a supervisor in a call center. She stated that her job entailed taking incoming calls, supervising up to 300 people, performing quality control, training, and dealing with customer issues that could not be handled by customer representatives. She noted that the job entailed six hours of sitting and two hours of walking around throughout the workday, with no lifting. She stated that she worked at this position for about three and a half years. Plaintiff testified that prior to that she worked as a corrections officer for about five years. As a corrections officer Plaintiff provided control of inmates, including monitoring and initiating counts of inmates. She stated that she was on her feet most of the day, and at times she had to restrain inmates. Plaintiff had to restrain inmates about once a month in the state facility where she worked, and a couple of times a week in the country jail where she worked. She stated that she worked as a credit manager for about three years prior to working as a corrections officer, and prior to working as a credit manager she worked as a general office clerk.

Plaintiff testified that she cannot return to any of her previous work as a result of her medical conditions. She stated that she has diabetes, neuropathy in her hands and feet, and problems with her stomach. Plaintiff stated that some days she cannot get out of bed as a result of her impairments. She stated that despite following the treatment of her physicians, her blood sugar fluctuates severely, which renders her unable to function or do normal chores or activities. Plaintiff stated that her neuropathy causes pain, numbness, and tingling, and it limits her ability to lift. She stated that she can lift no more than a gallon of milk occasionally. Plaintiff testified that she also has irritable bowel syndrome that requires her to go to the bathroom from three to five or six times a day. She stated that these episodes come on quickly and require her to stop what she is doing and immediately use the bathroom.

Plaintiff testified that as a result of her diabetes, food does not empty from her stomach into her intestines. She explained that some food stays in her stomach and makes her sick. She testified

---

[3]Unless otherwise noted, the information in this section is derived from the opinion of ALJ (*see* Tr. 11–20).

that she has been to the hospital for this problem three times in the last thirty days. Plaintiff also stated that she has sleep apnea that results in daytime fatigue and causes difficulty sleeping at night. She stated that she takes two to three-hour naps during the day a couple of times a week. Plaintiff testified that she is treated for asthma with an inhaler and a nebulizer. She stated that she uses the nebulizer about once a week. Plaintiff stated that some of her attacks come on immediately and cause problems breathing.

Plaintiff additionally stated that she has degenerative joint disease, and she previously underwent a total knee replacement of the right knee on May 23, 2005. She stated that she has continued to have pain, stiffness, and swelling in her knee. Some days it is hard to move, and she has to stay off her feet and keep her leg elevated at least two hours a day in order to be able to use her right leg. She also stated that she has problems with her ankles, and she occasionally uses a cane that was prescribed to her by her doctor. Plaintiff stated that she uses the cane a couple of times a week when she is having problems with her knees and ankles.

Plaintiff further stated that she has temporomandibular joint dysfunction that causes severe pain and headaches, and she has occasional migraine headaches. She also stated that she takes medication for depression, and she sometimes has a hard time handling things and breaks down and cries. She stated that her medication does not totally alleviate her symptoms. Plaintiff testified that she has a history of kidney stones that have not resolved, and she has some stones in each kidney. Plaintiff noted that she has a history of bronchitis and continues to have occasional breathing difficulties. She stated that she has undergone two hernia repairs, and she has been advised not to lift anything over five pounds.

Plaintiff testified that in an average day she gets up around 7:30 a.m. and takes her medication. She is not able to cook or do yard work, and she cannot do housework or laundry as a result of her impairments. Plaintiff testified that she does not drive often as a result of the side effects from her medication, which include drowsiness and nausea. She stated that she is unable to shop. Her weight had dropped about 20 pounds during the previous month. Plaintiff testified that during the day she reads about four hours a day, and she watches television about six hours a day, sitting with her feet elevated. She stated that this has been her daily routine for approximately two years. She stated that she can stand or walk about 15 to 20 minutes at a time, but she cannot stoop

or squat. She also cannot climb stairs, and she drops things a couple of times a week as a result of the numbness in her hands. She does little socialization.

B.   Relevant Medical History

The medical evidence reflects that on February 15, 2005, Gabriel Berry, M.D., reported that Plaintiff was being seen for follow-up after an umbilical hernia repair. He reported that Plaintiff was doing well and had no complaints at that time. He noted that "Her pain is well controlled and nearly nonexistent at this point. She is tolerating a regular diet and is slowly returning to her regular activities." (Tr. 294–98).

Plaintiff was treated by Samuel Tarwater, M.D., on April 25, 2005, for complaints of abdominal pain and diarrhea. Dr. Tarwater reported that Plaintiff had a history of diabetes since February 2001. Plaintiff was diagnosed with irritable bowel syndrome (Tr. 112–16).

On May 10, 2005, Michael Gilmore, M.D., examined Plaintiff and reported that she had a recurring problem in the medial and lateral aspects of her right knee. He stated that an MRI of the right knee performed on May 5, 2005, reflected tricompartmental osteoarthritis. He reported that Plaintiff had probable severe chondromalacia and degenerative fraying of the medial meniscal tear (Tr. 174–203). On May 23, 2005, Dr. Gilmore noted that Plaintiff had failed all conservative measures for her right knee, and she underwent a total right knee replacement. Dr. Gilmore reported that Plaintiff did extremely well with the procedure, and her pain remained in very good control. He stated that Plaintiff was set up with physical therapy, and she obtained extremely good range of motion with no evidence of infection in her knee. Her wounds were clean, dry, and intact, and Plaintiff was discharged on May 27, 2005 (Tr. 134–41).

Dr. Gilmore also reported that Plaintiff had a history of chronic arthritis and degenerative joint disease. He stated that Plaintiff presented with symptoms of sleep apnea, including morning fatigue and headache, wakening more than two times per night with nocturia, and taking naps during the day. He stated that during Plaintiff's hospitalization, after her surgery, Plaintiff had a tachycardia and a desaturation. Dr. Gilmore further reported that Plaintiff had a history of asthma with two admissions in the previous 18 years. He stated that she had nocturnal wheezing two times a week. Dr. Gilmore diagnosed Plaintiff with type II diabetes, hypertension, asthma, and morbid obesity.        On October 24, 2005, Plaintiff presented to Sudhaker Reddy, M.D., with complaints

of mild dysphagia in the upper esophageal sphincter area. Dr. Reddy reported that Plaintiff had a history of some gastroesophageal reflux symptoms, but nothing on a regular basis. He stated that Plaintiff had a past medical history significant for diabetes mellitus, hypertension, asthma, irritable bowel syndrome, arthritis, degenerative joint disease, TMJ, depression, kidney stones, and migraine headaches. Upon examination, Dr. Reddy reported that Plaintiff was an obese female in no acute distress. He stated that her neck was supple without carotid bruits or thyromegaly, she had no tenderness in her back; her lungs were clear to auscultation; her heart had a regular rate and rhythm without gallop, murmur or rub appreciated; her abdomen was soft and ovoid with active bowel sounds, and no tenderness, organomegaly or masses were noted with deep palpation; and her extremities reflected no clubbing, cyanosis, or edema. Dr. Reddy diagnosed Plaintiff with mild dysphagia, history of diarrhea, and right lower quadrant abdominal pain.

On December 19, 2005, Dr. Reddy reported that Plaintiff had diabetes, and she was felt to have diabetic gastroparesis and some motility disorder contributing to the dyshpagia and reflux. He noted that Plaintiff was placed on Reglan and seemed to be doing much better. He also reported that Plaintiff had only had one episode where she felt a little full in the esophagus, and her diarrhea was resolved. Dr. Reddy reported that Plaintiff's blood sugar was fairly stable until recently when she developed an ear infection. He stated that Plaintiff had a host of stool studies because of her diarrhea, which were all negative. He stated that her thyroid profile was normal, and she had a prior negative colonoscopy. Dr. Reddy diagnosed Plaintiff with diabatic gastroparesis and GERD with some degree of esophageal dysmotility (Tr. 279–93A).

On December 21, 2005, Dr. Berry reported that Plaintiff had recently noticed a bulge at the superior right aspect of her previous hernia incision. She denied any nausea, vomiting, or obstructive-type symptoms, and she said that other than some mild discomfort, this condition did not bother her a great deal. Dr. Berry reported that Plaintiff had not had any other changes in her medical history since he last saw her, other than her knee surgery in April. He reported a past medical history significant for obesity, diabetes, asthma, hypertension, irritable bowel syndrome, arthritis, migraines, and depression. Upon examination, Dr. Berry stated that Plaintiff was "in pretty good health. She denies any fevers, chills, weight loss, etc." Plaintiff also denied any chest pain, syncope or palpitations, cough, hemoptysis, wheezing, nausea, vomiting, diarrhea, constipation, or

blood in her stools. He stated that Plaintiff's heart had a regular rate and rhythm without appreciable murmur. He could not clearly feel a fascial defect in Plaintiff's abdomen when she was lying down, "although [he was] fairly certain this is a hernia, given her exam and findings in the upright position." He diagnosed Plaintiff with a recurrent umbilical hernia and discussed surgical options with Plaintiff (Tr. 294–98).

On July 14, 2006, Plaintiff was treated by Victor Ortega, M.D., for chronic bronchial asthma. Dr. Ortega reported that Plaintiff had cough, congestion, and wheezing that was inducible easily with detergents, including ammonia, dust, pollen, spring/fall temperature changes, humidity, and heat. He opined that Plaintiff would benefit from the use of Singulair (Tr. 330–31).

Plaintiff was hospitalized in July and August 2006, for intractable nausea and vomiting. In a Discharge Summary dated August 10, 2006, Jason Hatcher, D.O., reported that Plaintiff was unable to stay adequately hydrated at home, and she had been admitted and treated aggressively with IV fluids, IV antiemetics, and started on IV Reglan. He reported that Plaintiff's nausea and vomiting quickly subsided and she showed clinical improvement (Tr. 389–403).

C.    Other Information Within Plaintiff's Claim File

On August 17, 2005, Plaintiff presented to Lawrence Annis, Ph.D., for a psychological consultative examination. Dr. Annis reported that Plaintiff stated she could not work as a result of knee problems, asthma, irritable bowel syndrome, recurrent degenerative joint disease, and pain disorder associated with a general medical condition. He stated that Plaintiff's anxiety and depression were exacerbated by protracted physical problems and the immediate physical limitations they imposed. He also stated that additional emotional distress seemed associated with Plaintiff's reduced standard of living, financial concerns, diminished social opportunities, increased dependence on others to do things for her, and missing the relationships and self-esteem associated with employment. He opined that "at least some degree of depression is likely to continue for the foreseeable future, although outpatient treatment and prescribed psychotropic medications may help her to feel better about herself and more in control of her life" (Tr. 156–59).

At Plaintiff's hearing, a Vocational Expert (VE) identified Plaintiff's past relevant work as a correctional officer, DOT #372.667-018, medium (very heavy as performed by Plaintiff), semiskilled; officer manager, DOT#169.167-034, sedentary (light as performed by Plaintiff), skilled;

jailer, DOT #372.367-014, light (very heavy as performed by Plaintiff), semiskilled; credit manager, DOT #169.167-086, sedentary (sedentary to light as performed by Plaintiff), skilled; and general office clerk, DOT #209.562-010, light, semiskilled.

The VE was asked to consider Plaintiff's vocational profile as set forth above and RFC as determined by the ALJ. With regard to Plaintiff's mental impairments, the VE was specifically asked to consider the restrictions enumerated by Dr. Annis in August 2005, which include Dr. Annis's opinion that Plaintiff "appears generally able to interact appropriately with people she does know, [but] the present depression and anxiety would be expected to reduce her ability to participate in social interactions requiring patience in difficult situations," and Dr. Annis's opinion that:

> Evidence was found of depression and anxiety to the degree that occupational achievement is impeded. If [Plaintiff's] physical condition permits work, she would require more encouragement than do most people when encountering work difficulties or social challenges. She would probably not do well in occupations requiring frequent, protracted or demanding social interaction, such as receptionist, restaurant server, cashier, or sales clerk. Due to her distractions to physical and emotional factors, she should presently avoid employment at occupations requiring technical precision, driving, operating machinery, or contact with dangerous substances. If she is physically able, she is likely to do better in vocations that deal mostly with things, such as dishwasher, data entry operator, agricultural laborer, or cleaner.

(Tr. 19, 156–59).

The VE then testified that upon consideration of Plaintiff's RFC and Dr. Annis's opinions, Plaintiff retains the ability to perform her past work as a general office clerk, both as that job is performed in the national economy and as it was previously performed by Plaintiff.

V.      DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ failed to follow the Eleventh Circuit pain standard in evaluating her complaints of pain (Doc. 14 at 15–17). Second, Plaintiff contends the ALJ erred in concluding that she could return to her past relevant work without making findings regarding the demands of that work (*id.* at 18–20). As relief Plaintiff seeks remand for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g) (*id.* at 20). Defendant contends that the final decision of the Commissioner is consistent with the Act, regulations, and applicable case law, and the findings of fact are supported by substantial evidence on the record as a whole; therefore, the decision below should be affirmed (Doc. 17).

A.   Eleventh Circuit Pain Standard

Plaintiff contends the ALJ failed to apply the Eleventh Circuit's three-part pain standard and improperly discredited her testimony concerning disabling pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, *supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt v. Sullivan, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Dep't. of Health and Human Serv's., 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, supra, at 1548–49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

---

[4]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).
Case No.  5:07cv97/RS/EMT

Initially, Plaintiff's arguments fail to address any of the reasons set forth by the ALJ for discounting her complaints; instead, Plaintiff's arguments focus mainly on her medical diagnoses (*see* Doc. 14 at 16–17). However, the diagnoses are not disputed by the parties, nor were they rejected by the ALJ. Indeed, the ALJ found that Plaintiff suffered from numerous "severe" impairments, and his findings were in large part based on records that document Plaintiff's diagnoses. The mere presence of a diagnosed condition that results in "severe" impairments, however, does not result in disability.

Here, after acknowledging that Plaintiff suffered from numerous "severe" impairments, the ALJ evaluated Plaintiff's impairment-related complaints. The ALJ first stated that Plaintiff's "impairments cause significant limitation in [her] ability to perform basic work activities" (Tr. 13). Nevertheless, the ALJ found "unpersuasive" Plaintiff's "allegation that she is incapable of any work due to her impairments" (Tr. 17) (emphasis added). The ALJ then outlined his reasons for finding Plaintiff's complaints unpersuasive.

      1.    The ALJ first stated that "[n]o treating or examining physician has ever opined that [Plaintiff] is not able to perform work activity, nor have they given any restrictions more limiting than the residual functional capacity assessed [in the ALJ's] decision" (*id.*).[5] A review of the record reveals that Plaintiff was examined on one occasion by Dr. Pratt, and she received treatment from various providers during the time frame relevant to this appeal,[6] including Michael D. Gilmore, M.D., who performed Plaintiff's total knee arthroplasty on May 23, 2005 (*see* Tr. 134–41, 174–203); Integras Therapy and Wellness Center, which provided physical therapy following Plaintiff's knee surgery (Tr. 142–47); Feitz Foot Clinic, which provided treatment for a painful right foot in 2004 and then for sore feet in 2005 after Plaintiff's surgery (Tr. 204–09, 333–36); Panhandle Family Medicine, P.A., where Plaintiff was examined and "medically cleared" for her knee surgery, examined following her surgery, and treated for various ailments such as nose

---

[5] The RFC determined by the ALJ bears repeating here: Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds. She can sit, stand, or walk for approximately 6 hours in an 8-hour workday; occasionally climb stairs, balance, kneel, or crawl; and frequently stoop and crouch. As a result of her mental impairments, Plaintiff is limited in her ability to maintain social functioning (Tr. 17, ¶ 5).

[6] In this discussion, the court is referring to examinations or treatment concerning Plaintiff's physical conditions; the results of her psychological consultative examination will be discussed *infra*.

bleeds, congestion, diarrhea, asthma, and high blood sugar levels (Tr. 222, 224, 232, 234, 313, 324); Sudhakar C. Reddy, M.D., who treated Plaintiff with medications for GERD, Diabetic Gastroparesis, and diarrhea (Tr. 279–93A, 340–41), Gabriel E. Berry, M.D., who performed a laparoscopic umbilical hernia repair in (approximately) January 2005 (Tr. 294–98), and Gulf Coast Medical Center, where Plaintiff was treated for asthma (Tr. 330–32, 343–88). However, as noted by the ALJ, none of these examiners or providers opined that Plaintiff was unable to work or was otherwise restricted in a manner inconsistent with the RFC determined by the ALJ (*see id.*).[7]

Plaintiff was examined by Rheumatologist Parks W. Pratt, M.D., on January 25, 2006 (*see* Tr. 337–39). Although Plaintiff reported pain, her physical examination was normal with the exception of her gait, which was noted to be "slightly asymmetrical," and lower back, which was noted to be tender (*see* Tr. 337, 339). No work restrictions or other physical limitations were noted or recommended (*id.*).

Regarding treating physicians, Dr. Gilmore's records document Plaintiff's complaints of right knee and ankle pain on May 3, 2005, prior to her arthroplasty (*see, e.g.*, Tr. 199–200), but he recommended conservative care and an MRI of the right knee (Tr. 202). Once the MRI was obtained, Plaintiff chose knee surgery to repair the problems observed on the MRI (*see* Tr. 195, 197). Again, however, Plaintiff was not restricted from work or other activities awaiting surgery (*see id.*). Plaintiff underwent the surgery on May 23, 2005, and immediately following the surgery Dr. Gilmore opined that Plaintiff had a good range of motion and was permitted "weight bearing as tolerated" (Tr. 134). By July 5, 2005, although Plaintiff had some pain and used a cane for assistance, she was noted to be "doing well," and she had full range of motion in her right knee without pain, her reflexes and sensation to light touch were normal, and "motors [were] intact" (Tr. 183). Again, no work restrictions were imposed, and Plaintiff was advised to return in three months for follow-up (*id.*). Dr. Gilmore's records are similar from Plaintiff's last visit with him on August 22, 2005 (*see* Tr. 175–76).

---

[7]Plaintiff has pointed to no evidence in any of these records that contradicts this statement of the ALJ (*see* Doc. 14 at 16–17). Nevertheless, the court has conducted its own review of the records and has found nothing contradictory.

Case No. 5:07cv97/RS/EMT

Plaintiff's physical therapy records following her knee surgery reflect that as early as June 13, 2005, her therapist was recommending certain exercises and noted that the bike would be added at Plaintiff's next visit (Tr. 143). Although Plaintiff obviously had some restrictions immediately following her surgery, the therapy records do not reflect any opinion that Plaintiff could not return to work. Moreover, Plaintiff failed to comply with the recommended course of physical therapy, and failed to return altogether after having participated in only three physical therapy sessions (*see* Tr. 142, 187). Similarly, when Plaintiff presented to the Foot Clinic complaining of pain in July 2005, she was advised to wear a surgical shoe (Tr. 205). When she returned in September 2005, still complaining of pain, it was noted that Plaintiff was "not wearing proper shoe gear" and instead was wearing "house slippers and flip-flops most of the time" (*id.*). Nevertheless, the Foot Clinic records do not reflect that Plaintiff was restricted from work or other activities (*see id.*).

Similarly, the records from Panhandle Family Medicine, Dr. Reddy, Dr. Berry, and Gulf Coast Medical Center do not reflect work restrictions or other restrictions inconsistent with the RFC determined by the ALJ. Indeed, one record from Panhandle Family Medicine dated December 22, 2005, reflects Plaintiff's report that she had walked a mile the night before and an observation that Plaintiff seemed to be "in very good spirits" (Tr. 311).

It is significant that no physician who examined Plaintiff found limitations consistent with disability. *See* Singleton v. Astrue, --- F. Supp. 2d ---, 2008 WL 859256 at *10 (D. Del. March 31, 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled"); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964–65 (8th Cir.1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)). Indeed, the fact that no physician had opined that plaintiff was disabled, alone, might be considered substantial evidence for the ALJ's decision. *See* Rice v. Apfel, 990 F. Supp. 1289, 1294 (D. Kan 1997) (citing Ray v. Bowen, 865 F.2d 222, 226 (10th Cir.1989)). Thus, the ALJ did not err in rejecting Plaintiff's complaints of pain based on the fact that no examining or treating physician identified any specific functional limitations arising from her conditions.

2. In further discounting Plaintiff's complaints, the ALJ considered the comments of some of her treating physicians, including their observations that medications were controlling Plaintiff's conditions (*see* Tr. 18). For example, the ALJ noted that Dr. Berry reported in February 2005 that Plaintiff was doing well and had no complaints (*id.*). Indeed, as previously noted, Dr. Berry stated on February 15, 2005, that Plaintiff's "pain is well controlled and nearly nonexistent at this point" (Tr. 296). From a hernia standpoint, Dr. Berry's records reflect that Plaintiff then did "well" for the next nine months but had a recurrent hernia in December 2005, although as the ALJ noted, it did not bother her a great deal (Tr. 16, 19, 294–95). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). Additionally, the ALJ referenced the treatment records of Dr. Reddy, noting that in December 2005, he opined that although Plaintiff had diabetes, she seemed to be doing much better since being placed on Reglan (Tr. 18). Again, the record supports the ALJ's finding (*see* Tr. 279–80). Moreover, as noted by the ALJ, a "host of stool studies," conducted because of Plaintiff's complaints of diarrhea, were all normal, Plaintiff's blood sugar levels were fairly stable, her thyroid profile was normal, and she had a prior negative colonoscopy (Tr. 18, 279). Although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility. *See* 20 C.F.R. § 404.1529(c). Further, the ALJ noted Dr. Berry's report in December 2005 that Plaintiff was in "pretty good health," and she denied any diarrhea (and other things) at that time (*see* Tr. 18, 294). Plaintiff indicated that she was able to walk one mile as of December 2005 (Tr. 311), and in March 2006 she was described as "very busy" helping her father-in-law (Tr. 317).

While Plaintiff alleges that she was disabled as of May 23, 2005, her condition one year later is important and relevant. To establish disability, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last <u>for not less than 12 months</u>. *See* Barnhart v. Walton, 535 U.S. 212, 218–22 (2002); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Thus, for example, even if Plaintiff was temporarily "disabled" as a result of her knee surgery, this does not establish disability because the evidence does not support a finding that the condition impaired her ability to work for at least

twelve months. Moreover, the record reflects that as of one year after her alleged disability, Plaintiff had improved. As noted by the ALJ, she sought treatment for moderate asthma in July 2006 (Tr. 330–32), and in July and August 2006 she was hospitalized for nausea and vomiting (Tr. 17, 389–403). The ALJ was correct to find, though, that the conditions which resulted in her hospitalization had improved or resolved (Tr. 389). Again, controlled impairments are not disabling.

   3. Next, in discounting Plaintiff's complaints and finding her "not disabled," the ALJ considered the opinions provided by the State Agency consultants (Tr. 18), and the RFC determined by the ALJ is consistent with their opinions (*see* Tr. 149–50 (agency physician finding, in pertinent part, that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk about six hours in an eight-hour workday; and occasionally climb stairs or ramps, balance, kneel, crouch, or crawl); Tr. 300–301 (finding the same, but also opining that Plaintiff could frequently stoop or crouch)). The ALJ correctly acknowledged that these opinions are not entitled to controlling weight, "but must be considered and weighed as those of highly qualified physicians who are experts in the evaluation of the medial issues in disability claims" (Tr. 18). *See* 20 C.F.R. § 404.1527 (every medical opinion should be evaluated).

   4. Finally, with the exception of Plaintiff's arthroplasty, the treatment described by the ALJ and documented in the record was fairly conservative (Tr. 15–17).[8] The Eleventh Circuit has held that allegations of disabling pain may be discounted because of inconsistencies such as conservative medical treatment. Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996). Additionally, the court notes that on at least on two occasions, Plaintiff failed to follow medical advice. She failed to comply with the recommended course of physical therapy (Tr. 142), and she failed to wear shoes that would alleviate her pain, as recommended by the Foot Clinic (Tr. 205). *See* Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[T]he ALJ's consideration of Ellison's noncompliance as a factor in discrediting Ellison's allegations of disability is adequately supported . . . ."); *see also* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability).

---

[8]The ALJ did not explicitly state that he was considering Plaintiff's conservative care in discounting Plaintiff's complaints, but the nature of the care further supports the decision of the ALJ. Moreover, the first three reasons for discounting Plaintiff's complaints, specifically cited by the ALJ, are sufficient to uphold his ultimate credibility findings.

Case No. 5:07cv97/RS/EMT

Thus, because the ALJ articulated at least three inconsistencies on which he relied in discrediting Plaintiff's testimony regarding her subjective complaints, and because the ALJ's credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding should be affirmed. *See* Foote, 67 F.3d at 1561–62. A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. *See id.*

B.   Evaluation of Plaintiff's Past Relevant Work

The ALJ found that Plaintiff was "not disabled" because she could perform her past relevant work despite her impairments (Tr. 19). Although the ALJ concluded that Plaintiff could not perform some of her more demanding past work, such as that of a corrections officer, he determined that Plaintiff was still able to perform the job of "general office clerk, both as that job is performed in the national economy and as it was previously performed" by Plaintiff (Tr. 19) (emphasis added).

Plaintiff contends that this finding is erroneous because the DOT description of "general office clerk" states that the position requires, in part, answering telephones, conveying messages, and running errands (Doc. 14 at 18–19). However Dr. Annis, a consulting psychological examiner, opined that Plaintiff would not do well in occupations requiring "frequent, protracted or demanding social interaction, such as receptionist," and she would "do better in vocations that deal mostly with things, such as dishwasher, data entry operator, agricultural laborer, or cleaner" (Doc. 14 at 19).

Initially, the VE was specifically asked to consider all of the restrictions enumerated in Exhibit 10F, Dr. Annis's report, including those identified by Plaintiff (*see* Tr. 19, 156–59, 432–35). After fully considering Dr. Annis's restrictions, the VE opined that Plaintiff could perform her previous job of general office clerk,[9] both as she performed it and as it is customarily performed (*see id.*). The VE noted that the job did not require much social interaction (Tr. 434). Thus, the opinions of Dr. Annis were fully accounted for in the ALJ's hypothetical questions. If a hypothetical question posed to a vocational expert comprises all of a claimant's credible limitations, it is substantial evidence to support the ALJ's findings. *See* Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Moreover, even though the DOT may describe the job of office clerk as Plaintiff states,

---

[9]The VE also opined the Plaintiff could perform the sedentary job of surveillance monitor, but it was noted that Plaintiff had not previously performed this type of work (*see* Tr. 434).

Case No.  5:07cv97/RS/EMT

based on the VE's testimony the ALJ also found that Plaintiff could perform the job as she previously performed it, which is different from the DOT description. Furthermore, although Plaintiff's counsel was given the opportunity to question the VE (indeed, it was he who brought up Dr. Annis's restrictions, which prompted the ALJ to inquire of the VE regarding those restrictions), he did not point out this alleged discrepancy to the VE (*see* Tr. 432–35). *See* White v. Astrue, 240 Fed. Appx. 632, 634 (5th Cir. 2007) (citing Carey v. Apfel, 230 F.3d 131, 146–47 (5th Cir. 2000) ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing")). Thus, the ALJ properly determined that Plaintiff could return to her previous work as an office clerk. An individual who can perform his or her past relevant work is "not disabled." *See* 20 C.F.R. § 404.1520 (2007).

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 19th day of May 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**